[¶ 1] This matter came before the Court upon the Board of Professional Responsibility's "Report and Recommendation for Order of Disbarment Effective July 15, 2019," filed herein June 20, 2019, pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure (stipulated discipline). The Court, after a careful review of the Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Gregory L. Knudsen should be disbarred. It is, therefore,
[¶ 2] ADJUDGED AND ORDERED that the Board of Professional Responsibility's "Report and Recommendation for Order of Disbarment Effective July 15, 2019," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further
[¶ 3] ADJUDGED AND ORDERED that, as a result of the conduct set forth in the Report and Recommendation for Order of Disbarment, Respondent Gregory L. Knudsen shall be, and hereby is, disbarred, effective July 15, 2019; and it is further
[¶ 4] ORDERED that Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules. That rule governs the duties of disbarred and suspended attorneys; and it is further
[¶ 5] ORDERED that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall pay the Wyoming State Bar the amount of $50.00, which represents the costs incurred in handling this matter, as well as pay the administrative fee of $750.00. Respondent shall pay the total amount of $800.00 to the Wyoming State Bar on or before September 30, 2019. If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further
[¶ 6] ORDERED that the Wyoming State Bar may issue the stipulated press release contained in the "Report and Recommendation for Order of Disbarment Effective July 15, 2019"; and it is further
[¶ 7] ORDERED that the Clerk of this Court shall docket this Order of Disbarment, along with the incorporated "Report and Recommendation for Order of Disbarment Effective July 15, 2019," as a matter coming regularly before this Court as a public record; and it is further
[¶ 8] ORDERED that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Disbarment, along with the incorporated Report and Recommendation for Order of Disbarment Effective July 15, 2019, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further
[¶ 9] ORDERED that the Clerk of this Court cause a copy of this Order of Disbarment to be served upon Respondent Gregory L. Knudsen.
[¶ 10] DATED this 3rd day of July, 2019.
BY THE COURT:
/s/ MICHAEL K. DAVIS
Chief Justice
Attachment
BEFORE THE SUPREME COURT
STATE OF WYOMING
JUNE 20, 2019
In the matter of GREGORY L. KNUDSEN, WSB # 5-2664, Respondent.
WSB No. 2019-038
D - 19 - 0007 *74 REPORT AND RECOMMENDATION FOR ORDER OF DISBARMENT EFFECTIVE JULY 15, 2019
THIS MATTER came before the Board of Professional Responsibility ("Board" or "BPR") on the 18th day of June, 2019, for consideration of the parties' Stipulation for disbarment effective July 15, 2019 ("Stipulation"), submitted pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure. The Board having reviewed the Stipulation, the accompanying Affidavit of unconditional admission ("Affidavit") and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows.
Findings of Fact
1. Respondent has been licensed to practice law in Wyoming since 1989 and maintains an active practice of law in Torrington, Wyoming. During the period relevant to the above-captioned disciplinary proceeding, Respondent also served as municipal court judge for the City of Torrington.
2. This matter arises from a sexual relationship between Respondent and a female divorce client ("Wife"). Wife originally engaged a different lawyer to represent her in the divorce. On March 5, 2018, Wife's first lawyer filed a divorce complaint on Wife's behalf against her husband ("Husband").
3. Wife and Husband were married in 2001 and had two minor children, one born in 2003 and the other born in 2008. The younger child was nine years old when the divorce action was filed. Child custody and visitation were at issue in the divorce, which was a contested matter that was not resolved until mid-September 2018, when a divorce decree was entered approving the parties' agreement that they would have shared custody of their minor children.
4. Shortly after Wife's first lawyer filed the divorce complaint on her behalf, Wife decided to change counsel. Wife requested a refund of the unearned portion of a retainer she had paid to her first lawyer. On March 30, 2018, the sum of $1,574.50 - reportedly, the unearned portion of the retainer Wife paid to her first lawyer - was deposited in Respondent's lawyer trust account.
5. Respondent first met with Wife on April 9, 2018. Respondent did not enter into a written fee agreement with Wife but told Wife that he would try to keep the legal fees down because Wife was a close friend of Respondent's municipal court clerk. On April 10, 2018, Respondent filed an entry of appearance in the divorce case. Wife's first lawyer requested and was granted leave to withdraw on April 18, 2018.
6. On or about May 10, 2018, Respondent began communicating with Wife via text messages which included frequent transmission of Graphics Interchange Format (GIF) images. Over the next six months, Respondent exchanged more than 11,000 text messages and GIF images with his client.
7. Within a few days after the two began texting, the content of their text exchanges, and the GEF images being sent by Respondent to Wife, included many that were explicitly, sexually suggestive. Initially, Wife expressed concern that her husband might discover the communications. Respondent texted, "You do erase our texts, right?" When it became clear to Wife that Respondent was proposing a sexual relationship with her, she texted, "You need to think of the consequences for me." Nonetheless, Respondent continued to send texts and GIF images that made clear his desire to have a sexual relationship with his client.
8. The sexual relationship between Respondent and Wife began on or about May 20, 2018, during an evening visit by Wife to Respondent's residence. Within a few days, Respondent was sending texts to Wife urging her to visit Respondent's residence again. She responded, "I'm a big chicken and scared of getting caught." Respondent reassured her, texting, "I know. We will be careful. Your phone is the most dangerous thing. Always keep it clean and we will be fine."
9. Respondent was aware that it was unethical to engage in a sexual relationship with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced. Nonetheless, Respondent persisted in urging Wife *75 to have sex with him, often in texts. Respondent was aware that Wife's nine-year-old child had frequent access to his mother's phone. Therefore, Respondent encouraged Wife to erase their texts.
10. Beginning in late May 2018 and continuing through the settlement of the divorce and entry of a stipulated decree in mid-September 2018, Wife made frequent visits to Respondent's residence for the purpose of engaging in sex with him. Occasionally, Wife expressed anxiety that their sexual relationship would be discovered and would be detrimental to her divorce case. Nonetheless, Respondent did not relent in his efforts to carry on a sexual relationship with his client.
11. Initially, Respondent kept records of his time on Wife's case. He prepared one billing statement, dated June 4, 2018, which was itemized as to the date, description of activity and amount of time spent on each activity. The billing statement reflected that from April 10, 2018, through May 29, 2018, Respondent spent 7.65 hours working on Wife's case, for which he billed her at the rate of $200.00 per hour, for a total of $1,430.00.
12. On June 4, 2018, Respondent withdrew the sum of $1,430.00 from his lawyer trust account in payment of the June 4, 2018, billing statement, leaving a balance of $144.50 held in trust for Wife's account. (Respondent refunded this remaining balance to Wife in April 2019, shortly after Husband filed a complaint with the Wyoming State Bar). Respondent did not bill Wife for any time he spent on her case after May 29, 2018, which included preparing and serving written discovery requests; preparing and serving Rule 26 initial disclosures; preparing and filing a motion for protective order; representing Wife at a mediation; preparing and filing a property settlement and child custody agreement; preparing and submitting a decree of divorce; and preparing and filing a post-divorce motion for a QDRO order. However, Respondent's sexual relationship with Wife continued throughout his representation of her in the divorce action.
13. Early in his representation of Wife, Respondent told her that he and the presiding judge assigned to the case were close friends and would have occasional, ex parte communications about the divorce case. For instance, on May 20, 2018, Wife texted Respondent, "I did say hello to [the presiding judge] today ... trying to brown nose a bit ... ha ha ... I'm not sure if he knows me or not." Respondent texted back, "He knows you. I've made sure of that. He and I were talking about you briefly when we were standing outside the post office." Respondent elaborated, "We really were talking about your hearing. Just don't tell that to anyone. We aren't supposed to talk about cases outside the courtroom. But [the presiding judge] and I are very good friends." Wife responded, "I know you have said that ... makes me feel better ..." In his Affidavit of unconditional admission submitted in support of the Stipulation, Respondent testified that his statements to Wife regarding ex parte communications with the presiding judge were untrue and made for the purpose of reassuring Wife. Respondent further stated, "[The presiding judge] takes his job very seriously and would never do that."
14. On March 21, 2019, Husband submitted a complaint regarding Respondent to Bar Counsel. Husband alleged that Respondent had violated Rule 1.8(j), W.R.Prof.Cond., by entering into a romantic relationship with Wife while Husband and Wife were still married.
15. By letter dated March 28, 2019, Bar Counsel mailed a copy of Husband's complaint to Respondent, citing a possible violation of Rule 1.8(j) and requesting Respondent's written response. In his April 8, 2019, response to Bar Counsel's letter of inquiry, Respondent stated, "At no point through September 2018 did I have any sort of romantic relationship with [Wife]." Respondent stated that he had begun "dating" Wife during the period from October to December 17, 2018, and that he was not representing Wife at that time. Respondent stated, "I am well aware Rule 1.8 prohibits 'sexual relations' with a client unless such a relationship existed prior to representing the client. At no time did I violate *76 Rule 1.8 of the Rules of Professional Conduct." In his Affidavit, Respondent unconditionally admitted that these statements were untrue and were made for the purpose of protecting himself from disciplinary sanctions and to protect Wife.
16. On or about April 23, 2019, the Wyoming Division of Criminal Investigation ("DCI") executed a search warrant at Respondent's office and residence and obtained copies of Respondent's electronic communications with Wife. Both the warrants and the supporting Affidavits remain under seal, and the parties to the Stipulation are uncertain as to the basis for the issuance of the warrants. A DCI special agent provided Bar Counsel with more than 11,000 text exchanges between Respondent and Wife. Bar Counsel provided Respondent and his counsel with copies of these electronic communications. Negotiation of the present, stipulated resolution ensued.
17. Pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure, Respondent has unconditionally admitted to violations of Rule 1.7(a) (conflict of interest), Rule 1.8(j) (sex with client), Rule 1.16 (failure to withdraw from representation of client), Rule 3.4(a) (destruction or concealment of evidence), Rule 8.1(a) (knowingly making false statement of material fact to disciplinary authority), Rule 8.4(d) (conduct prejudicial to administration of justice) and Rule 8.4(e) (lawyer suggesting ability to improperly influence judge) of the Wyoming Rules of Professional Conduct. More specifically, Respondent has unconditionally admitted the following:
• Respondent violated Rule 1.7(a) by initiating and maintaining a sexual relationship with his client despite the obvious conflict between the interests of Wife in the divorce litigation and Respondent's personal interests in having sex with his client.
• Respondent violated Rule 1.8(j) by engaging in a sexual relationship with Wife when no consensual sexual relationship existed between them when the client-lawyer relationship commenced.
• Respondent violated Rule 1.16(a) by failing to withdraw from Wife's representation promptly upon commencement of a sexual relationship between them.
• Respondent violated Rule 3.4(a) by encouraging Wife to destroy or conceal their text exchanges and to conceal their sexual relationship despite their potential evidentiary value in the contested divorce case.
• Respondent violated Rule 8.1(a) by knowingly making a false statement of material fact to Bar Counsel in his response to Husband's complaint.
• Respondent violated Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice as set forth herein. Respondent further admits that his conduct posed an immediate threat to the administration of justice.
• Respondent violated Rule 8.4(e) by suggesting or implying to Wife that Respondent had an ability to improperly influence the presiding judge on the case.
18. Based upon the Stipulation and the Affidavit, the Board finds clear and convincing evidence of Respondent's violation of each of the foregoing Rules of Professional Conduct.
19. In his Affidavit, Respondent expressed genuine remorse about his conduct and professed horror at his behavior in this matter. Respondent offered various explanations for his conduct in this matter, none of which is particularly germane to the Board's findings or recommendation.
20. Prior to the present matter, Respondent has never been the recipient of professional discipline.
21. The parties stipulate, and the Board so finds, that Respondent's conduct violated several ABA Standards for Imposing Lawyer Discipline as set forth below.
22. Specifically, Respondent's violations of Rules 1.7(a) (conflict of interest) and 1.8(j) (sex with client) implicate ABA Standard 4.3, "Failure to Avoid Conflicts of Interest." Respondent violated this standard by fostering and engaging in a sexual relationship with Wife, knowing that Respondent's personal *77 interests were adverse to Wife's interests in the divorce action, with the potential for serious injury to Wife should evidence of the sexual relationship come to the Court's attention in determining child custody and visitation issues as well as an equitable division of the marital estate.
23. Respondent's violations of Rule 3.4(a) (destruction or concealment of evidence) and Rule 8.5(e) (lawyer suggesting ability to improperly influence judge) implicate ABA Standard 6.2, "Abuse of the Legal Process." Respondent violated this standard by encouraging Wife to destroy or conceal their text exchanges and to conceal their sexual relationship despite the potential evidentiary value of that information in the contested divorce case, and by stating or implying an ability to improperly influence the presiding judge.
24. Respondent's conduct in violating Rule 8.1(a) and other conduct set forth above also implicates ABA Standard 5.1, "Failure to Maintain Personal Integrity." Respondent violated this standard by engaging, on several levels, in intentional conduct involving dishonesty, deceit and misrepresentation that seriously adversely reflects on Respondent's fitness to practice.
25. Respondent's violations of Rule 1.16 (failure to withdraw from representation) and Rule 8.1(a) (knowingly making false statement of material fact to disciplinary authority) implicate ABA Standard 7.0, "Violations of Other Duties Owed as a Professional." Respondent violated this standard by failing to withdraw from Wife's representation promptly upon fostering and entering into a sexual relationship with her, and in knowingly making a false statement of material fact to Bar Counsel regarding the existence of such sexual relationship.
26. The parties stipulate, and the Board so finds, that under each of these ABA Standards, the presumptive sanction for Respondent's misconduct is disbarment.
27. The parties stipulate, and the Board so finds, that Respondent's misconduct as set forth above was, at all times and in all respects, intentional.
28. The parties stipulate, and the Board so finds, that Respondent's misconduct as set forth above caused actual or potential injury to Wife, Husband, their minor children and the legal system.
29. The parties agree, and the Board so finds, that aggravating factors present in this matter include: (1) dishonest or selfish motive; (2) pattern of misconduct; (3) multiple offenses; (4) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (5) vulnerability of the victim; and (6) substantial experience in the practice of law.
30. The parties agree, and the Board so finds, that mitigating factors present in this matter include: (1) absence of a prior disciplinary record and (2) Respondent's profession of remorse and acceptance of responsibility for his conduct.
31. In consideration of the foregoing factors, the parties stipulate, and the Board so finds, that disbarment is the appropriate sanction for the conduct to which Respondent has unconditionally admitted.
32. The parties further stipulate, and the Board so finds, that an effective date of July 15, 2019, for Respondent's disbarment will allow Respondent time to wind down his practice.
33. The parties have agreed that if the Board approves the Stipulation and the Court issues an order of disbarment in accordance herewith, the following press release may be issued:
The Wyoming Supreme Court issued an order disbarring Torrington attorney Gregory L. Knudsen effective July 15, 2019. The order of suspension stemmed from Knudsen's conduct in entering into a consensual sexual relationship with a client; failing to withdraw from the client's representation promptly upon entering into the sexual relationship; advising the client to conceal evidence of the relationship in the legal proceeding; and knowingly making a false statement of material fact to Bar Counsel regarding the existence of the sexual relationship after a complaint was filed with the Wyoming State Bar. Knudsen agreed to the disbarment, which *78 was recommended to the Supreme Court by the Board of Professional Responsibility of the Wyoming State Bar. Knudsen was ordered to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.
Conclusions of Law
34. Rule 1.7, W.R.Prof.Cond., provides in relevant part:
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
***
(2) there is a significant risk that the representation of one or more clients will be materially limited *** by a personal interest of the lawyer.
35. Comment [4] to Rule 1.7 provides in relevant part, "If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b). See Rule 1.16. ***"
36. Rule 1.8(j), W.R.Prof.Cond., provides, "A lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."
37. Rule 1.16(a), W.R.Prof.Cond., provides in relevant part, "Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the rules of professional conduct or other law ***."
38. Rule 3.4, W.R.Prof.Cond., provides in relevant part, "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act ***."
39. Rule 8.1, W.R.Prof.Cond., provides in relevant part, "[A] lawyer *** in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact ***."
40. Rule 8.4, W.R.Prof.Cond., provides in relevant part, "It is professional misconduct for a lawyer to:
***
(d) engage in conduct that is prejudicial to the administration of justice; [or]
(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law ***."
41. Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:
(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
(ii) Whether the lawyer acted intentionally, knowingly, or negligently;
(iii) The actual or potential injury caused by the lawyer's misconduct; and
(iv) The existence of any aggravating or mitigating factors."
42. The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."
43. ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct and mirrors the language of Rule 15(b)(3)(D), Wyo.R.Disc.Proc.:
(a) the duty violated;
(b) the lawyer's mental state;
(c) the potential or actual injury caused by the lawyer's misconduct; and *79 (d) the existence of aggravating or mitigating factors.
44. ABA Standard 4.3, "Failure to Avoid Conflicts of Interest," provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:
4.31 Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):
(a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or
(b) simultaneously represents clients that the lawyer knows have adverse interests with intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or
(c) represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.
4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.
4.33 Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.
4.34 Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.
44. ABA Standard 6.2, "Abuse of the Legal Process," provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:
6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.
6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.
6.23 Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.
6.24 Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no *80 actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.
45. ABA Standard 5.1, "Failure to Maintain Personal Integrity," provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:
5.11 Disbarment is generally appropriate when:
• a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
• a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.
5.13 Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.
5.14 Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.
46. ABA Standard 7.0, "Violations of Other Duties Owed as a Professional," provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct.
7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another and causes serious or potentially serious injury to a client, the public or the legal system.
7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.3 Reprimand [i.e., "public censure" under Rule 9(a)(3), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.4. Admonition [i.e., "private reprimand" under Rule 9(a)(4), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.
*81 47. The preamble to the ABA Standards includes the following discussion regarding mental state:
The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.
48. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."
49. ABA Standard 9.0, "Aggravation and Mitigation," provides:
9.1 Generally
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 Aggravation
9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 Factors which may be considered in aggravation. Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.
9.3 Mitigation
9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation. Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability ;
*82 (2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses.
Recommendation
In consideration of the Board's findings of fact and conclusions of law, the parties' Stipulation, and the facts and unconditional admissions in the accompanying Affidavit, the Board recommends the Wyoming Supreme Court issue an order:
1. Disbarring Respondent from the practice of law effective July 15, 2019.
2. Requiring Respondent to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar on or before September 30, 2019.
3. Directing the Wyoming State Bar to issue the parties' stipulated press release as set forth above.
DATED this 18th day of June, 2019.
Christopher H. Hawks, Vice Chair
Board of Professional Responsibility
Wyoming State Bar